NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____

TRANSMODAL CORP., ) Hon. Faith S. Hochberg
)
       Plaintiff, ) Civil Case No. 09-3057 (FSH)
  v. )
) **OPINION & ORDER**
EMH ASSOCIATES, INC., *et al.*, )
) Date: October 1, 2010
       Defendants )
_____ )

**HOCHBERG, District Judge:**

**I.     INTRODUCTION**

      This is a lawsuit between a shipping company and its client concerning amounts due for services rendered.  Plaintiff Transmodal Corp. alleges that defendants EMH Associates, Inc., and its sole shareholder, Mr. Eli Hazan, impermissibly exceeded EMH's credit limit with Transmodal and failed to timely pay the balances on the line of credit extended to EMH by Transmodal.  It asserts claims for 1) fraud, 2) breach of contract, 3) unjust enrichment, 4) piercing the corporate veil, and 5) an accounting and imposition of a constructive trust. Defendants counterclaim for breach of contract and conversion, alleging that Transmodal impermissibly froze EMH's assets, seized its goods, and misappropriated funds that should have been disbursed on EMH's behalf to the United States customs authorities.

      Defendants now move for summary judgment on all Transmodal's claims *except* breach of contract (Count Two).  Transmodal has cross-moved for partial summary judgment.  It affirmatively seeks judgment on its own breach of contract claim (Count Two), and it seeks judgment on defendants' counterclaim for breach of contract.

## II. BACKGROUND

Plaintiff Transmodal Corp. is a freight forwarder and customs broker based in Ramsey, New Jersey. It arranges for the transportation and customs clearance of cargoes entering the United States via ship or air, as well as the domestic transport of cargoes to its clients' customers. Defendant EMH Associates, Inc., is a New York-based manufacturer and importer of ladies' garments for sale to retail stores around the country.

Mr. Eli Hazan is EMH's president and sole shareholder. Notwithstanding his control over EMH, Mr. Hazan did not personally guaranty any of the obligations of EMH to Transmodal that gave rise to this action. Mr. Hazan executed all the documents relevant to this action in his capacity as a corporate officer of EMH. EMH has been in business since 2004. It has its own employees and leases office space (in its own name) on Seventh Avenue in New York City.

The business relationship between Transmodal and EMH began in late 2008 or January 2009, when Mr. Anthony Ambrosio, Transmodal's vice president for sales and marketing, contacted EMH to offer Transmodal's services in arranging to import EMH's merchandise from abroad. EMH began contracting with Transmodal for its shipping needs in January 2009.

The parties agreed that Transmodal would extend to EMH a line of credit to facilitate its shipping orders with Transmodal. On or about January 5, 2009, Mr. Hazan, as President of EMH, executed a document entitled "Credit Application and Agreement." It purports to be an application for a line of credit with Transmodal. No credit approval or terms are indicated on the face of the document. According to a letter from Margaret Kantzer

(Executive Director of Transmodal) to Swava Knox (an EMH employee) dated March 24, 2009, Transmodal offered EMH a credit limit of $15,000, with each invoice to be paid within 15 days of its issuance. The date on the letter does not appear to mark the beginning of the parties' lending relationship, since the parties agree that EMH had a balance of $41,614 on its line of credit with Transmodal as early as February 4, 2009. Rather, certain emails between Ms. Kantzler and Ms. Knox indicate that this letter was intended to be a reminder of pre-agreed terms relating to EMH's line of credit with Transmodal. It also appears from this correspondence that EMH had been tardy in paying some of its balances, which EMH does not dispute.

EMH expected its shipping volume to increase dramatically beginning in April 2009. It had orders for delivery of 250,000 to 300,000 garments from Bangladesh, which were scheduled to arrive over an 8-12 week period. Transmodal and Mr. Ambrosio, its vice president for sales and marketing, were aware of the high volume of merchandise that EMH expected to be shipped, and they were eager to obtain all of EMH's international shipping business.

On April 14, 2009, EMH executed a document entitled Transmodal Credit Application and Agreement. On the blank labeled "credit amount requested" is hand-written "$30,000.00," and for "credit terms requested" is hand-written "Net 30." Net 30 means that invoices are to be paid within thirty days. The second page of the document is entitled "credit application supplemental terms and conditions." It provides, in relevant part,

> "The Customer(s) executing this Credit Application hereby agree(s) that payment for all services is subject to the terms and conditions noted on the preceding pages, that are incorporated herein by reference, including but not limited to Company's most recently updated General Terms and Conditions ... located on Company's website at www.transmodal.net/generalterms.net, the terms of which are incorporated herein by reference."

Transmodal has produced a document entitled General Terms and Conditions which it claims to be the document referenced in the April 14, 2009 credit application. EMH denies that it was provided with a copy of this document. The document includes two provisions relevant here. First, it authorizes Transmodal, after 30 days notice, "to sell Customer's property at public or private sale or auction," and apply the receipts to "all debts Customer owes to Company for current and/or prior shipment(s), or monetary obligations of any kind owed by Customer to Company." Second, it provides, "Customer represents that Customer is in sound financial condition from a net worth and cash flow standpoint and is able to timely meet its monetary obligation toward the Company."

EMH routinely carried balances in excess of $15,000 and $30,000 (its supposed credit limits) throughout the course of the parties' dealings. EMH claims that Transmodal was aware of this fact and ratified it because it wanted more business from EMH. It cites emails from Mr. Ambrosio soliciting business from EMH. It also cites the testimony of Ms. Margaret Kantzer, the Executive Director and Treasurer of Transmodal, who explained that extending credit is a "privilege," which means that it is in Transmodal's discretion whether to extend credit, and how much.

EMH has submitted several emails between its employees and Transmodal discussing EMH's cash flow problems. They date from March to June 2009. Transmodal frequently complained that EMH's balance was past due and over the credit limit. EMH typically responded that it would make the payments requested. EMH did in fact make a number of payments to Transmodal in 2009, totaling $294,967.38, but it usually carried a substantial balance.

According to Transmodal's ledger, EMH had an outstanding balance of $237,982.27 as of May 28, 2009. EMH disputes some of the charges, but most are undisputed. Under the terms of the invoices themselves, $208,385.46 of this amount would have become due over the month from June 17, 2009 through July 16, 2009 (and thus was not yet due as of May 28, 2009). EMH claims that it was only $4,063.58 in arrears at that time. Transmodal contends that, since EMH's balance was in excess of the $30,000 credit limit and since the terms of the credit agreement superceded the terms of the invoices, the entire balance was immediately due and payable. When EMH failed to pay the outstanding balance, Transmodal seized EMH's goods that were in its possession and refused to release them to EMH's customers. It then filed this lawsuit.

### III.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, "[s]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994). The judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at

249.  "Consequently, the court must ask whether, on the summary judgment record, reasonable jurors could find facts that demonstrated, by a preponderance of the evidence, that the nonmoving party is entitled to a verdict."  *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 860 (3d Cir. 1990).

The party seeking summary judgment always bears the initial burden of production.  *Celotex*, 477 U.S. at 323.  This burden requires the moving party to establish either that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden.  *Id.* at 322-23.  This burden can be "discharged by showing ... that there is an absence of evidence to support the nonmoving party's case."  *Id*. at 325.  Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party.

To avoid summary judgment, the nonmoving party must then demonstrate facts supporting each element for which it bears the burden, thus establishing the existence of a "genuine issue of material fact" justifying trial.  *Miller*, 843 F.2d at 143; *accord Celotex*, 477 U.S. at 324.  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Id*. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).  Further, summary judgment may be granted if the nonmoving party's "evidence is merely colorable or is not significantly probative."

*Anderson*, 477 U.S. at 249-50.

**IV.    DISCUSSION**

    **A.    Defendants' Motion for Partial Summary Judgment**

        1.    <u>Count One: Fraud</u>

Transmodal claims that defendants EMH and Mr. Hazan committed fraud by executing the April 14, 2009 credit application at a time when the representation in Transmodal's General Terms and Conditions, that the "Customer [EMH] is in sound financial condition," was untrue. EMH disputes that it or Mr. Hazan ever made that representation, since it contends that the General Terms and Conditions document produced by Transmodal is not the same document as the one that Transmodal provided to it. Since there is a factual dispute, for the purposes of this motion only, the Court must accept the version of events set forth by the non-moving party (Transmodal) and view the facts in the light most favorable to it. Accordingly, the Court assumes without deciding that the document entitled General Terms and Conditions was in fact the document referenced in the April 14, 2009 credit application and that its terms were fully incorporated by reference into the parties' agreement.

Transmodal is suing for the money allegedly owed by EMH on its line of credit and incidental costs associated with shipping and storing EMH's merchandise. Its alleged losses are thus purely economic. Under New Jersey's economic loss doctrine, a plaintiff may not recover damages in tort for economic loss sustained through breach of an agreement or warranty. *Alloway v. Gen. Marine Indus.*, L.P., 695 A.2d 264, 275 (N.J. 1997) (holding that claim arising out of defective product must be brought under contract principles where only damage is to the product itself). Although the New Jersey Supreme Court has never expressly decided under what

circumstances a fraud claim for purely economic loss, as here, can be sustained, courts in New Jersey have interpreted the economic loss doctrine to mean that a party to a contract may only bring a claim for fraud that is extraneous to the contract. *See generally Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562-65 (D.N.J. 2002) (citing cases); *see also Rainbow Apparel, Inc. v. KCC Trading, Inc.*, No. 09-CV-05319 (DMC-MF), 2010 WL 2179146, at *10 (D.N.J. May 26, 2010) (following *Bracco Diagnostics*); *Emerson Radio Corp. v. Orion Sales, Inc.*, No. CIV. A. 95-6455, 2000 WL 49361, at *7 (D.N.J. Jan. 10, 2000) ("The critical issue is whether the allegedly tortious conduct is extraneous to the contract. ... [A]n act that is in breach of a specific contractual undertaking would not be extrinsic, but an act that breaches some other duty would be."), *aff'd in part, rev'd in part on other grounds*, 253 F.3d 159 (3d Cir. 2001); *cf. Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 528 (D.N.J. 1998) (permitting fraud claim where "[t]he factual basis for the alleged fraud is extraneous to the contract – it does not involve nonfulfillment of a warranty or guarantee contained within the contract itself"). This Court joins its sister courts in predicting that the New Jersey Supreme Court would apply the economic loss doctrine to bar fraud claims where the alleged misrepresentation is not extraneous to a contract.[1]

---

[1] EMH and Transmodal are based in New York and New Jersey, respectively. The Court must therefore consider whether there is a conflict between the two states' laws. On this question, New York law is in accord with New Jersey. To have a cognizable claim for fraud in New York, Transmodal would have to: "(i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted). None of these is present here. Since the laws of the two states are not in conflict, no choice of law analysis is necessary. *See P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 460 (N.J. 2008).

Transmodal's fraud claim is based on a representation drafted by Transmodal and contained within the General Terms and Conditions document, which, according to Transmodal, is *not* "extraneous to the contract." Transmodal contends that the General Terms and Conditions document falls squarely within the four corners of the parties' agreement. Consequently, the Court concludes that Transmodal's purported fraud claim runs afoul of the economic loss doctrine and cannot be sustained. Transmodal's claim for breach of contract (Count Two) is the appropriate vehicle for recovering on EMH's alleged failure to adhere to its contractual obligations. Summary judgment is granted on Count One in favor of defendants.

### 2. Count Three: Unjust Enrichment

Defendant moves for summary judgment on the undisputed grounds that there is a valid and binding contract between the parties. Where a valid contract governs the parties' rights and obligations, a party cannot bring a claim for unjust enrichment. *See Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 311 (3d Cir. 1982). Plaintiff elected not oppose this point in its brief. Consequently, summary judgment is granted on Count Three.

### 3. Count Four: Piercing the Corporate Veil

Transmodal seeks to pierce the corporate veil of EMH to obtain damages from Mr. Hazan personally. EMH is incorporated in New York, which therefore has a strong interest in having its law govern whether the corporate form is respected. In any event, the laws of New York and New Jersey do not appear to be in conflict.

Under New York law, there is a "presumption of separateness between a corporation and its owners, which is entitled to substantial weight." *Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 60 (2d Cir. 1988) (internal citation omitted). A plaintiff seeking to pierce the

9

corporate veil must show: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. N.Y. State Dep't of Taxation & Fin.*, 623 N.E.2d 1157, 1160-61 (N.Y. 1993). Factors indicating that a corporation is dominated "include lack of normal corporate formality in the subsidiary's existence, under-capitalization, and personal use of the subsidiary's funds by the parent or owner." *Am. Protein Corp.*, 844 F.2d at 60.

New Jersey also abides by "the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise." *Richard A. Pulaski Constr. Co., Inc. v. Air Frame Hangars, Inc.*, 950 A.2d 868, 877 (N.J. 2008) (quoting *State Dep't of Envtl. Prot. v. Ventron Corp.*, 468 A.2d 150 (N.J. 1983)). A veil-piercing claim "depends on a finding that the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent." *Ventron*, 468 A.2d at 164. The corporate form will not be disregarded except "in cases of fraud, injustice, or the like." *Id.*

Although Mr. Hazan is the sole shareholder of EMH, there is no evidence that the corporate formalities were not maintained. EMH has been in business since 2004, and there is no dispute that it was carrying on its stated business as a manufacturer and importer of ladies' garments during all relevant times. *Cf. Morris*, 623 N.E.2d at 1161 (owners' domination of corporation especially warrants veil-piercing when they "use the corporation as a mere device to further their personal rather than the corporate business"). Nor has Transmodal come forward with any expert testimony showing that EMH was undercapitalized for its stated business.

In light of the foregoing, Transmodal has not submitted any evidence from which a reasonable fact finder could infer that Mr. Hazan intended to abuse the corporate form of EMH to commit fraud. It makes unsupported statements that Mr. Hazan withdrew certain monies from EMH, and that EMH was insolvent, but it has not timely submitted any evidence of that.[2] By contrast, it is undisputed that EMH disbursed $217,112.39 to Transmodal in May 2009. EMH has also adduced evidence that it paid $2.2 million to its other suppliers. That evidence is strongly indicative that EMH was not being dominated by Mr. Hazan as a vehicle for committing a fraud or wrong against EMH's contractual counterparties.

Transmodal has failed to meet its burden of coming forward with evidence to create a triable issue of fact as to whether EMH's veil should be pierced. Transmodal's "conclusory assertions, without more, are not evidence, and are completely inadequate to support a finding that it would be unjust to respect [the] corporate form." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1461 (2d Cir. 1995); *see also Waterville Inv., Inc. v. Homeland Sec. Network, Inc. (NV Corp.)*, No. 08-CV-3433, 2010 WL 2695287, at *8-*9 (E.D.N.Y. July 2, 2010) (granting summary judgment on veil-piercing claim where plaintiff made only conclusory assertions that company was a "facade"). The absence of evidence with respect to the essential elements of a veil-piercing claim renders summary judgment appropriate. *See Celotex*, 477 U.S. at 323. .

    4.    <u>Count Five: Accounting and Imposition of a Constructive Trust</u>

---

[2] These assertions in Transmodal's Rule 56.1 statement refer to certain exhibits in the certification of George Cotz, which Magistrate Judge Shwartz struck from the record as untimely. Transmodal did not appeal the Magistrate Judge's decision to this Court. Consequently, exhibits to the Cotz certification will not be considered as part of this motion. In any event, evidence of insolvency or payments from the company to the principal, without more, would not warrant the extraordinary remedy of disregarding the corporate form.

Ordering an accounting and imposing a constructive trust on one's assets are equitable remedies. *See Rainbow Apparel*, 2010 WL 2179146, at *6. In New Jersey "[t]he equitable jurisdiction to compel an account, rests upon three grounds – first, the existence of a fiduciary or trust relation; second, the complicated character of the accounts; and third, the need of discovery." *Id.* (quoting *Burdick v. Grimshaw*, 168 A. 186 (N.J. Ch. 1933)). As with all equitable remedies, it is also necessary that there be no adequate remedy at law. *Id.*

None of the foregoing is applicable. Transmodal and EMH are arm's-length counterparties to a contract, not fiduciaries. The damages in this matter may be calculated according to ordinary contracts principles. The parties have conducted discovery in this matter. Finally, Transmodal has an adequate remedy at law: damages for breach of contract (Count Two in its complaint). Plaintiff elected not to oppose this point in its brief. Consequently, summary judgment is granted on Count Five.

**A.     Plaintiff's Cross-Motion**

1.     Count Two: Breach of Contract

Transmodal moves affirmatively for summary judgment on its claim that EMH breached the parties' contract by exceeding the credit limit and failing to pay off its balance. It argues that it is entitled to summary judgment because a merchant's record of its customer's account is prima facie proof that the balance is due. *See Sears, Roebuck & Co. v. Merla*, 361 A.2d 68, 69 (N.J. Super. Ct. App. Div. 1976) (commenting that computer printout of account "will constitute only prima facie evidence of an account stated" and that adversary will have the opportunity to refute it at trial). Prima facie proof is not the summary judgment standard. Summary judgment is only warranted where there is no genuine dispute of material fact requiring

trial.

Here, the parties dispute whether there was, in fact, a credit limit applicable to EMH's line of credit. EMH argues that the parties' course of dealings showed that there was no limit, notwithstanding the $15,000 (and later $30,000) figure on the face of the March 24, 2009 letter and April 14, 2009 credit application, respectively. It has submitted evidence that it frequently carried a balance in excess of $15,000 or $30,000, and Ms. Kantzer testified that it was up to Transmodal how much credit to extend to its clients. On the other hand, there is evidence of Transmodal attempting to enforce the purported credit limit by demanding that EMH pay down its balance.

The trier of fact would have to resolve this dispute, since the existence, if any, of a credit limit and the terms applicable to it are central to the question of whether Transmodal had the contractual right to seize EMH's goods in June 2009. EMH contends that it became unable to pay the balance owed *because* Transmodal wrongfully seized its goods and refused to release them to EMH's customers. EMH also disputes whether the document entitled General Terms and Conditions, which purports to grant Transmodal the right to sell EMH's merchandise to satisfy past due balances, was part of their agreement. Transmodal is not entitled to summary judgment on this claim.

    2.  <u>Defendant's Counterclaims</u>

EMH brings two counterclaims, alleging that Transmodal 1) wrongfully seized its goods and 2) converted monies that should have been disbursed on EMH's behalf to the United States customs authorities. Transmodal seeks summary judgment only on the former counterclaim in its cross-motion. It argues that it had a valid lien on the goods because the

balance had undisputedly not been paid.  However, since disputes of fact exist as to whether EMH's account was in default at the time the goods were seized, it cannot be said as a matter of law that Transmodal had a valid lien on the goods.  Summary judgment is inappropriate.

### V.     CONCLUSION & ORDER

For the reasons set forth in this opinion, defendants' motion for partial summary judgment [docket # 63] is **GRANTED**.  Judgment is entered in favor of defendants on Counts One, Three, Four, and Five.  Plaintiff's cross-motion for partial summary judgment [docket # 69] is **DENIED**.  The parties will proceed to trial on plaintiff's claim for breach of contract (Count Two) and defendants' counterclaims for breach of contract and conversion.

                                                        /s/  Faith S. Hochberg
                                                   Hon. Faith S. Hochberg, U.S.D.J.